United States District Court
District of Connecticut
FILED AT        BRIDGEPORT

2-10 2005

Kevin N Rowe, Clerk

By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :       CASE NO.
                               :
          v.                   :       3:05cr-029 (SRU)
                               :       Violation: 18 U.S.C. §1341
                               :       [Mail Fraud]
JAMES K. BELL                  :

INFORMATION

The United States Attorney charges:

COUNT I

Persons, Parties and Entities

1.  At all times relevant to this Information, World
Wrestling Entertainment, Inc. (formerly World Wrestling
Federation, Inc.), (hereinafter "WWE") was a Delaware Corporation
with its principal place of business in Stamford, Connecticut.
WWE, among other things, creates, produces and markets
entertainment for both live and television audiences featuring
professional wrestlers for whom WWE has developed a character
profile, a storyline, and a role in the WWE productions.

2.  During all times relevant hereto, JAMES K. BELL, the
defendant herein, was employed by WWE with responsibilities for,
among other things, overseeing the licensing of WWE intellectual
property.  It was part of his job description to identify
potential licensees, negotiate licensing agreements, and develop
new licensing strategies in order to benefit WWE.   BELL also
owned and operated Bell Consulting, LLC.

3. During all times relevant hereto, another individual, referred to herein as SS, was an acquaintance of BELL.  BELL arranged for this individual, through SS's wholly owned entity, "SS and Associates, Inc." (SSAI), to become a licensing agent for WWE.

### Background

4. As a result of its creation and promotion of the professional wrestlers' characters, WWE owns as part of its intellectual property the use of the characters' likeness, name, storyline, and related features.  WWE's intellectual property also includes its logo and related production titles.

5. It is part of the business of WWE to enter into licensing agreements with manufacturers who wish to create and sell products which utilize WWE's intellectual property.  Such manufacturers include garment makers, toy makers, videogame manufacturers, and others.  Generally, a licensing agreement permits the manufacturer to produce items for sale that include WWE intellectual property and in exchange require the payment of a fee or royalty to WWE by the manufacturer.  The royalty is generally determined by a percentage of the total sales of the licensed items.

6.  Licensing agreements entered into with WWE also required the manufacturer to keep track of and report sales of items utilizing WWE intellectual property on a periodic basis.  It was

common practice during the relevant period for licensees to report sales and submit royalty payments simultaneously.

7.   After receiving royalty payments, WWE would determine whether and to what extent the professional wrestlers' characters were featured in the products manufactured so that a portion of the royalties received by WWE could be in turn passed on to the individual wrestler.

8.   During the time relevant hereto, JAMES K. BELL, the defendant herein, an employee of WWE, identified potential licensees, negotiated licensing agreements and developed new licensing strategies in order to benefit WWE.

9.   In approximately 1994, BELL arranged for SS, through his wholly owned entity SSAI to become a licensing agent for WWE.  As a licensing agent, it was among SS's responsibilities to identify potential licensing opportunities for WWE, negotiate new licensing agreements and otherwise promote WWE licensing for the benefit of WWE.  WWE retained authority for final approval of all licensing agreements.  This approval was usually sought from and given by BELL.

10.   As compensation for SS's efforts as a licensing agent, WWE agreed to pay SSAI a commission based upon a percentage of total revenue generated by each licensee procured by SSAI.

11.   Thereafter, when WWE received periodic sales reports and royalty payments from licensees, WWE first determined whether

the licensee was one that had been procured by SSAI, and, if it was such a licensee, then the amount of commission due to SSAI would be calculated and a check sent, usually by mail, to SSAI.

### The Scheme and Artifice to Defraud

12.  Beginning in or before January 1998, and continuing through October 2000, in the District of Connecticut and elsewhere, JAMES K. BELL, the defendant herein, and others known and unknown to the United States Attorney, did devise a scheme and artifice to defraud WWE, including depriving WWE of the intangible right of honest services, and to obtain money and property from WWE through materially false and fraudulent pretenses and representations.  Specifically, BELL did arrange for SSAI to receive commissions on certain WWE licensing agreements to which SSAI was not entitled; BELL received kickbacks from SSAI relating to these licensing agreements, monies to which he was not entitled; and BELL thereby deprived WWE of its intangible right to honest services from BELL and caused financial loss to the WWE.

13.  It was part of this scheme and artifice to defraud that the following occurred in the District of Connecticut and elsewhere:

A.  When potential licensees approached or contacted BELL at WWE, rather than negotiate a licensing agreement "in house," BELL would advise SS of the contacts so that SS could

4

arrange the licensing agreements and receive commissions on those
agreements.

   B.   Similarly, BELL would advise SS that he was going
to add SSAI to a pre-existing licensing agreement as the
licensing agent so that SSAI would begin to receive commission
payments from those agreements, even though BELL knew SSAI had no
entitlement to such commissions.

   C.   BELL and SS agreed that the commissions paid by WWE
to SSAI as a result of the licensing agreements referenced in
paragraphs 13A and 13B (the "licensing agreements"), would be
evenly split between SS and BELL.

   D.   Similarly, on occasion, BELL arranged with SSAI to
receive 50% of SSAI's commission on a particular licensing
agreement notwithstanding that SSAI may not have procured or
negotiated the licensing agreement.

   E.   Thereafter, BELL completed internal documentation
at WWE reflecting that SSAI should be paid a commission on a pre-
existing licensing agreement notwithstanding that SSAI had no
role in the procurement of the licensing agreement.

   F.   Thereafter, BELL completed and provided to the
accounting department at WWE documents which reflected that SSAI
was to receive commissions under the licensing agreements.

   G.   As a result of the licensing agreements, WWE
received royalties and sales reports on a periodic basis and

5

thereafter sent to SSAI commission checks for commissions purportedly due thereon.

H.  At or about the time SSAI received the commission checks from WWE, BELL created an "invoice" for services rendered by Bell Consulting, LLC and submitted the invoice to SSAI.  The amount reflected in the invoice was for an amount equal to 50% of the commission paid by WWE to SSAI on the licensing agreements.

I.  SSAI then prepared a check payable to Bell Consulting, LLC representing the 50% kickback for commissions paid to SSAI on the licensing agreements.

J.  It was further part of the scheme to defraud WWE that BELL and SSAI agreed to receive and did receive a kickback from a certain licensee who manufactured T-shirts (the "T Shirt licensee").  The T-Shirt licensee agreed to pay and did pay SSAI 2% of its sales of WWE apparel in exchange for favorable terms in its licensing agreement with WWE.  BELL and SSAI split this 2% payment evenly.

14.  On or about the dates set forth below, for the purpose of executing the scheme and artifice, the defendant knowingly caused to be mailed and reasonably could have foreseen the mailing of the items identified below:

DATE                DESCRIPTION OF ITEM MAILED

March 3, 2000       Check from WWE in the amount of $122,154.69
                    payable to SSAI representing payment of
                    commissions due on one or more of the
                    licensing agreements

6

May 15, 2000          Check from WWE in the amount of $439,240.43
                      payable to SSAI representing payment of
                      commissions due on one or more of the
                      licensing agreements

June 9, 2000          Check from WWE in the amount of $312,788.55
                      payable to SSAI representing payment of
                      commissions due on one or more of the
                      licensing agreements

July 17, 2000         Check from WWE in the amount of $2,675.73
                      payable to SSAI representing payment of
                      commissions due on one or more of the
                      licensing agreements

October 24, 2000      Check from WWE in the amount of $38,214.63
                      payable to SSAI representing payment of
                      commissions due on one or more of the
                      licensing agreements

        All in violation of Title 18, United States Code, § 1341.


                      UNITED STATES OF AMERICA



                      JOHN H. DURHAM
                      DEPUTY UNITED STATES ATTORNEY



                      PETER S. JONGBLOED
                      SUPERVISORY ASSISTANT
                      UNITED STATES ATTORNEY



                      CHRISTOPHER W. SCHMEISSER
                      ASSISTANT UNITED STATES ATTORNEY


                              7